WILLIAM M. SIMPSON *vs.* JAMES H. CARLETON.

Certified copies of the schedule of debts and list of claims filed in proceedings in insolvency are incompetent to prove that the debtor was insolvent at the time of making an alleged preference, in a suit by the assignee to recover back the property conveyed.

But in such suit evidence that the debtor had expensive habits, and was inattentive to business, and that these facts were known to the defendant, and evidence of the debtor's general reputation as to insolvency, are competent for the purpose of proving that the defendant had reasonable cause to believe the debtor insolvent.

A deposition is inadmissible, the caption of which does not set forth that the deponent was sworn to testify the truth, &c. relating to the cause for which the deposition was taken.

f goods alleged to have been converted have been mixed by the mortgagee with other similar goods which the defendant as mortgagee had a right to retain under a mortgage, and it is left for the jury to determine whether or not he had means for making a discrimination which the other party had not, evidence of a general demand by the plaintiff for the goods mortgaged, and of a reply by the defendant that " he was sorry he could not accommodate him, and that he had been expecting this demand for some days," is competent to be submitted to the jury with the other testimony to show a conversion

but, if all the goods so intermixed have been sold by the defendant, no proof of demand is necessary.

If a mortgage, given as security for a debt at the time when the same was contracted, contains a covenant that a new mortgage shall be given, at a future specified time, as additional security for the same debt, a mortgage afterwards given in pursuance of that covenant is not within the protection of *St.* 1838, *c.* 163, § 10, but may be impeached like other securities given for pre-existing debts.

TORT for the conversion of a stock of goods claimed as the property of the plaintiff's insolvent.

At the trial in the superior court evidence was introduced tending to prove that, on the 12th of February 1857, the defendant sold to one Alexander, an insolvent, a stock of goods amounting in all to $5,800, and received in payment cash and other property to the amount of $2,000, and a mortgage on the property sold to secure notes for $3,800, one thousand dollars of which became due in six months, and the residue at longer periods, which mortgage contained a covenant for the renewal of the security by a new mortgage every six months upon such goods as should be subsequently purchased by Alexander to replenish his stock; that Alexander went into business selling the mortgaged property at retail and replenishing the stock by purchases of similar articles on credit; that on the 12th of August 1857, the defendant called upon him to pay the first note; that Alexander made excuses for delay until the 17th of September, when he made a new mortgage of his stock in store, consisting partly of old and partly of new stock purchased since the mortgage, but it did not appear with distinctness what was the amount of each or the specific articles of each; that on the 9th of December following, Alexander failed to pay his notes, and the defendant took peaceable possession of the mortgaged goods, but left them in charge of Alexander; that on the 23d of December, the defendant learned that Alexander had carried away secretly a portion of the goods, and Alexander having refused to let him have possession of the residue, he sued out his writ of replevin, upon which the goods were taken and appraised in due course of law at about $3,900, and on the 14th of the following January gave bond to the officer and received the goods; that on the 14th of January the replevin suit was

settled, Alexander releasing the replevin bond and also the right to redeem the mortgaged goods to the defendant; that on the 8th of February proceedings in insolvency *in invitum* were instituted by the creditors of Alexander, and on the 23d of April the plaintiff was duly elected assignee of Alexander, accepted the trust, and received a deed of assignment; that during the months of March and April the defendant, having the title abov described, sold the goods and received the money therefor; that on the 21st of July following the plaintiff made a written demand upon the defendant for all the goods taken by him upon the writ of replevin, and at the same time made a verbal demand of the same substantially like the written one, in reply to which the defendant said " that he was sorry he couldn't accommodate him," and that " he had been expecting this demand for some days."

This demand and refusal were relied upon by the plaintiff as evidence of conversion.

The plaintiff produced the deposition of one Davis taken upon notice. The defendant objected to the deposition for the insufficiency of the caption, because it only set forth "that the deponent was sworn to testify the truth, the whole truth and noth ing but the truth "; but the deposition was admitted.

The plaintiff claimed that the mortgage of the 17th of September was void, as having been given in contravention of the insolvent laws, and produced evidence tending to show that Alexander was then insolvent and that the defendant had reasonable cause to believe him insolvent; and he was allowed to introduce in evidence, under objection, certified copies of the schedule of debts, the list of claims, and a demand proved in the court of insolvency against said Alexander, for the purpose of proving his insolvency. No schedule of assets was produced, and it did not appear that there had been such a schedule, or that any assets ever came to the hands or possession of the assignee. The plaintiff also introduced evidence under objection, tending to show that during the time Alexander was in business he kept and drove fast horses; that he was not attentive to his business and would sometimes be

absent from it for days together; and that the defendant kept an office in the second story of the same building occupied by Alexander, for the purpose of proving that the defendant had reasonable cause to believe the debtor insolvent.

The plaintiff was also permitted to ask, under objection, what was the general reputation of Alexander as to solvency in the latter part of the summer and in September of 1857, in Haverhill.

There was evidence tending to show that Alexander had purchased and brought into his store since the mortgage other goods, similar to those mortgaged, some of which were there at the time of the taking of the goods by the defendant's writ of replevin; but there was no evidence of the identity of the goods so bought, nor of any means of distinguishing them from the mortgaged goods; and the plaintiff claimed that, having demanded all the goods which were taken on the writ, the burden was on the defendant to show what goods of those so taken belonged to him.

The defendant asked the court to instruct the jury that if the mortgage of the 17th of September was a renewal of the mortgage of February 12th, made in good faith in pursuance of the covenant set forth in that mortgage and under an agreement made at the time of the sale of the goods and the contraction of the mortgage debt that the mortgagor, in consideration that he might have possession of the mortgaged goods to sell by retail, would keep up the stock by new purchase, and, in order to keep the security good, would renew the mortgage upon his whole stock, then the mortgage of September 17th would not be void, although the mortgagor might have been at that date actually insolvent and the mortgagee might have had reasonable cause to believe him insolvent, and although it was made within six months before the time of filing the petition against the insolvent.

*Ames*, J., declined so to instruct the jury; but did instruct them that the second mortgage was in effect a new security for a preexisting debt, and, if in all other respects liable to impeachment as a fraudulent or prohibited preference, it would be void as

against the assignee, notwithstanding the covenant contained in the first mortgage providing in terms for the renewal of the security.

The defendant asked the court to instruct the jury that, if they found that the mortgagee took all the goods in the store under a writ of replevin, and the taking was assented to by the insolvent, previous to the insolvency, and the replevin suit was settled and nothing was done by the assignee to separate or designate any portion of the goods which were not mortgaged, and no demand was made upon the defendant by the assignee to set out or deliver up such goods but the written and verbal demand for all the goods, such demand and qualified refusal would not be sufficient evidence of the conversion of the goods; and further, if they found that the defendant took the goods under the circumstances above stated, and no demand was made upon him for them until after they were sold and converted into cash, then such demand and qualified refusal would not be sufficient evidence of a conversion.

The court declined to give the instructions prayed for, but did instruct the jury that it was a question of fact to be decided by the jury whether there was in reality such an intermixture or confusion of goods as to render it difficult or impossible to distinguish which belonged to the defendant under his first mortgage and which were not included in that mortgage, and that, if this uncertainty was owing to the imperfect description contained in that first mortgage, the inconvenience and loss must fall upon the defendant; but that if it arose wholly from the fact that new goods, exactly or substantially like the old, had been added to the stock since the first mortgage, and not intermixed by the defendant himself, then the defendant might lawfully take possession of the whole; and after so taking possession, upon being applied to by the plaintiff to give up all that did not fall within the first mortgage, the answer " take what belongs to you and I will keep what belongs to me " would not be sufficient evidence of a conversion.

But if, on the other hand, sufficient and reasonable time had been allowed to the defendant to make the selection of what

10*

belonged to him, and if he had means for making the discrimination which the other party had not, then the appropriation of the whole by the defendant to his own use, by selling the property or otherwise, would amount to a conversion of so much of it as did not in fact belong to him.

And, among other instructions not objected to, the court instructed the jury, that it was incumbent on the plaintiff to show what the goods are which he claims that the defendant has wrongfully converted to his own use; that it was not enough to show generally that some indefinite and uncertain portion of a large mass had been so appropriated; that any want of precision or distinctness in this respect must tell against the party claimant; that some general description might be sufficient, and it was not necessary to proceed with the exactness of an inventory, but that it must not be left to conjecture; and that if the jury could find that a certain distinct value, or a certain parcel of goods not specifically described, but proved to be of a certain value, had been wrongfully converted by the defendant to his own use, they could find that value, with interest, as the damages.

The jury found for the plaintiff, and the defendant alleged exceptions.

*B. F. Butler & N. St. J. Green,* for the defendant, cited, as to the evidence of conversion, *Willard* v. *Rice,* 11 Met. 493; *Smith* v. *Sanborn,* 6 Gray, 134; *Edgerly* v. *Emerson,* 3 Fost. (N. H.) 571; as to the validity of the second mortgage, St. 1856, *c.* 284, § 27; *Stevens* v. *Blanchard,* 3 Cush. 169; *Mitchell* v. *Black,* 6 Gray, 100; *Blodgett* v. *Hildreth,* 11 Cush. 311; Gen. Sts. *c.* 118, § 91.

*J. A. Gillis,* (*H. Carter* with him,) for the plaintiff. As to the competency of the copies, *Heywood* v. *Reed,* 4 Gray, 574; *Bartlett* v. *Decreet,* Ib. 113.

MERRICK, J. 1. The certified copies of the schedule of debts and list of claims appearing in the proceedings against Alexander in the court of insolvency, which were offered in evidence by the plaintiff, should have been excluded. They were produced to show that Alexander was insolvent at the time when

he made sale to Carleton of the goods in controversy; and the plaintiff was permitted to lay them before the jury to establish that fact. But the evidence was incompetent. The statute made it the imperative duty of the debtor to deliver, within three days after the date of a warrant issued against him in insolvency, to the messenger, a schedule containing a full and true account of ill his creditors. *St.* 1838, *c.* 163, § 6. Gen. Sts. *c.* 118, § 20. The schedule of debts is therefore nothing but a statement or declaration of the debtor; and the copies which were permitted to be given in evidence were in reality only proofs of what was said by Alexander long after the sale to Carleton. But admissions or representations of a vendor, made after other persons have acquired separate rights in the same subject-matter, cannot be received to disparage their title. He cannot in that way impair or affect the rights of his vendee or of those claiming under him. This is a familiar and elementary principle. It was early recognized by this court, and has ever since been acted upon as an established and unquestioned rule in the law of evidence. *Bartlett* v. *Delprat,* 4 Mass. 702. *Bridge* v. *Eggleston,* 14 Mass. 245. *Doe* v. *Webber,* 1 Ad. & El. 733. 1 Greenl. Ev. § 180, and notes.

These copies were undoubtedly admitted in evidence, as was suggested by counsel at the argument, upon the authority of the reported. decision in the case of *Heywood* v. *Reed,* 4 Gray, 574. It is there said that the proceedings in insolvency, which were received in that case were rightly admitted for the purpose for which they were offered; which, upon recurring to the report, is seen to have been to show the fact and the extent of the insolvency of Noyes, by whom it was alleged a sale of goods had been made in fraud of his creditors. That being the purpose for which the proceedings in insolvency were produced, the remark made by the court on the subject is obviously incorrect, and must have been induced by a misapprehension of the facts n reference to which it was made. It will be seen, upon recurring to the statement of facts in that case, and to the points of law which were raised and considered, that the attention of the court was attracted chiefly to other questions upon which

the decision which was made, sustaining the exceptions, de-
pended, and which must have been exactly the same, whatever
nad been the determination respecting the admissibility in evi-
dence of the schedule and proof of debts. Undoubtedly it was
only intended, by what was said on the subject, to recognize and
sustain the rule affirmed in the case of *Holbrook* v. *Jackson*, 7
Cush. 136 ; which was cited by counsel as having a bearing
upon the question under consideration. But, at any rate, the
general proposition, as stated in the former case, is untenable ;
and the record of proceedings against parties in insolvency can
be considered competent evidence, upon an issue like that in
the present case, only for the limited purpose for which in *Hol-
brook* v. *Jackson* it was held to be admissible.

2. The testimony of witnesses, in the form of depositions, is
admissible in evidence, upon the trial of issues in courts of law,
by force only of statutes under which they are allowed to be
taken. It cannot be received, therefore, in that form, unless
there has been a full compliance with the actual and positive
equirements of the law. *Bradstreet* v. *Baldwin*, 11 Mass. 229.
*Welles* v. *Fish*, 3 Pick. 74. *Davis* v. *Allen*, 14 Pick. 313. Our
statute provides that a deponent shall be sworn to testify the
truth, the whole truth, and nothing but the truth relating to the
cause for which the deposition is taken ; and it is made the
duty of the magistrate to annex to it his certificate, among other
hings, of the time and manner in which it is taken. Gen. Sts.
*.* 131, §§ 23, 26. It appears, from the certificate annexed to
he deposition of Davis, which was allowed to be given in evi-
dence against the objection of the defendant, that the deponent
was sworn generally to testify the truth and the whole truth,
out not particularly to that relating to the cause for which the
deposition was taken. The positive requirement of the law in
this respect was not therefore observed ; and the party for whose
benefit it was taken not having been careful to have the pro-
visions of the statute strictly complied with, is not entitled to
avail himself of it in evidence. It is certainly a suitable and
easonable precaution to concentrate the attention of the wit-
ness, by the form of the oath administered to him, to the par-

ticular matters respecting which he is called upon to testify and in making provisions upon the subject it may have been thought necessary, in view of the established forms of proceed ings in criminal cases, and especially in prosecutions for perjury that the oath should be administered in the very words in which the statute is expressed. But without seeking for the reason why it is so prescribed, it is sufficient that the statute is per emptory and unambiguous in its terms. It is the duty of the court to administer the law just as it is ordained by the legisla ture. A rule established in clear and explicit language by its authority cannot be disregarded or relaxed, but must in all cases be conformed to and enforced. The caption annexed by the magistrate to the deposition of Davis fails to show that the prescribed rule was complied with, and therefore it cannot be con sidered to have been regularly taken.

This same question has arisen in the courts in the states of Maine and New Hampshire, upon statutes very similar to our own; and it has there been determined, that, when it does no appear in the certificate of the magistrate that the deponent was sworn to testify the truth "relative to the cause for which it is taken," his deposition cannot be admitted in evidence, because it is not shown to have been taken in due observance of the positive requirements of law upon the subject. *Fabyan* v *Adams*, 15 N. H. 371. *Brighton* v. *Walker*, 35 Maine, 132 *Parsons* v. *Huff*, 38 Maine, 137. Upon authority, therefore, as well as upon the conclusions to be deduced from the particular provisions of the statute, it is apparent that the deposition of Davis should have been excluded, because it was unaccom panied by proof that his testimony was given under oath administered in the form prescribed by law.

3. In other respects the rulings and instructions of the court appear to have been unobjectionable. Certainly the evidence offered to show the inattention of Alexander to his business his indulgence in habits and practices of great and unnecessary expense, and the wasting of his time in useless and frivolous pursuits, and that all this was known to Carleton, had some ten dency to show that he had reasonable cause to believe that his

debtor could not have been, and was not, solvent at the time of the sale of the goods, the value of which is in controversy; because all experience shows that such courses as he is said to have indulged in are commonly, if not inevitably, destined to end in failure and bankruptcy. It is perfectly well known to all persons in any degree conversant with the transaction of business, that the conduct of a party and his habits — whether of frugal ity or of extravagance in his expenditures — are among the first things which men of ordinary care and prudence usually consider in forming a judgment respecting his pecuniary credit and responsibility. And accordingly evidence of such facts, upon the trial of an issue like that in the present case, has been held competent and proper to be submitted to the jury. *Bartlett* v. *Decreet*, 4 Gray, 113. *Heywood* v. *Reed*, Ib. 574. And on the same ground the questions respecting the general reputation of Alexander, in relation to his pecuniary credit and standing, were, under the circumstances otherwise shown, properly allowed to be proposed to and answered by the witnesses.

4. The written and verbal demands upon the defendant, and the reply which he made to them, were properly admitted in evidence for the purpose of proving conversion of the property claimed. His answer was indirect and evasive; but the meaning of it was to be ascertained and acted upon by the jury, who could scarcely, we think, have misunderstood or been misled by it. Besides, the sale of the goods, which appears to have been fully and satisfactorily proved, was of itself a conversion of such as belonged to the plaintiff; and therefore, with respect to them, no proof of demand and refusal was necessary to enable him to maintain his action.

5. Upon examining the bill of exceptions, we do not perceive that any occasion arose at the trial for the application of the instructions desired by the defendant in reference to the intermixture of goods, and the rights and duties of the respective parties in consequence of it. All the goods appear to have been sold and converted into money before any demand was made upon him by the assignee. This being so, neither of the parties could be called upon or required to designate and separate

from the general stock the articles not enumerated or included in the description in the first mortgage, which were conveyed by the second.   In such case it would be sufficient to show that the defendant had been in possession of particular parcels of property belonging to the plaintiff, which he had unlawfully converted to his own use, by an actual sale and an appropriation of the proceeds to his own benefit.   The plaintiff would therefore be entitled to recover for whatever articles belonging to himself he could show had thus been disposed of.   In this view of the facts reported, it seems unnecessary to consider in detail the instructions which were actually given, although, as we understand them, they appear to have been correct; because we cannot foresee what particular rule in reference to the facts to be disclosed upon the new trial, which for other reasons must be granted, ought to be prescribed to secure its regularity and make it effectual in deciding the matters in controversy.

6.  The instructions asked for by the defendant, in reference to the legal effect of the mortgage of the 17th of September and the rights of the parties under it, were properly withheld, and those which were given upon the subject were correct.   The mortgage of September 17th certainly was not a renewal of that of the 12th of February, inasmuch as the property conveyed by the one was not identical with that conveyed by the other.   The latter created new rights, and was intended to give, and if valid actually did give, to the mortgagee a new security for his preexisting debt, by creating a lien upon property of which, when the former was executed, the mortgagor was not the owner.   The validity of this latter conveyance is to be determined upon the circumstances under which it was made.   If the mortgagor was then in fact insolvent, and the mortgagee had reasonable cause to believe that he was in that condition, the conveyance was an attempt unlawfully to prefer one of his creditors to the disadvantage of the others; and as against them was therefore fraudulent, unlawful and void.   The agreement made by the parties on the 12th of February, and expressed in the covenants of the deed of that date, that the mortgagor should, at the expiration

of every six months, make a new mortgage, and embrace in it all the goods and merchandise of which his stock should then consist, including whatever he had in the mean time purchased or in any manner become entitled to, was a mere executory contract. The right of giving new security under such contract is said by the court, in the case of *Blodgett* v. *Hildreth,* 11 Cush. 313, to be plainly excluded by the provision in the Insolvent Act that "any security given for the performance of any contract, when the agreement for such security is part of the original contract, and the security is given at the time of making such contract," shall not be deemed to be a preference. *St.* 1838, *c.* 163, § 10. To render it effectual, not only must the agreement be made but the security must be given, contemporaneously with the original contract; if given afterwards, its validity is to be tried by the same tests which are in general to be applied to all sales and conveyances made by a debtor for the benefit of a pre-existing creditor. This is the principle which was embraced in the instructions given to the jury instead of those asked for by the defendant. In each particular, therefore, the ruling of the court was unobjectionable.

But because the deposition of Davis, and copies of the schedule of debts and proof of claims in the insolvency proceedings against Alexander, were erroneously admitted in evidence, the exceptions must be sustained, and a　　　*New trial granted.*